**UNITED STATES of America, Appellee,**

v.

**Carrie CHANDLER, also known as Amy Glasper, Defendant–Appellant.**

No. 620, Docket 94–1522.

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1996.

Decided Oct. 23, 1996.

Carrie Chandler, Bronx, NY, Pro Se.

Burton Ryan, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney, Eastern District of New York, Emily Berger, Assistant United States Attorney, Brooklyn, NY, of counsel), for Appellee.

Before: WINTER, JACOBS and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Carrie Chandler, *pro se*, appeals from a judgment of the United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge* ) entered on September 28, 1994. Following a jury trial, Chandler was convicted of one count of possessing and using five or more false identification documents in violation of 18 U.S.C. § 1028(a)(3),

one count of making a false statement in the application and use of a passport in violation of 18 U.S.C. § 1542, and one count of bank fraud in violation of 18 U.S.C. § 1344. On appeal, the defendant challenges the jury instructions for all three counts.

For the reasons that follow, we affirm on all counts.

## I. BACKGROUND

By superseding indictment entered on March 17, 1993, Chandler was indicted on five counts. Count One charged that between September 1987 and June 1992 Chandler possessed and used five or more false identification documents—namely, a U.S. passport, a State of Michigan driver's license, a certified copy of a birth certificate, a State of Michigan voter registration card, and a Social Security Card—in violation of 18 U.S.C. § 1028(a)(3). Count Two alleged that in July 1989, by stating her name as Amy L. Glasper, Chandler made a false statement in the application and use of a passport in violation of 18 U.S.C. § 1542. Count Three charged that between December 1987 and June 1992 Chandler used a passport procured by a false statement (the passport was issued in the name of Gail T. Wilson), violating 18 U.S.C. § 1546(a), which proscribes fraud and misuse of visas, permits, and other documents. Count Four charged Chandler with attempting in May 1992 to prevent a witness from testifying in the grand jury investigation into Counts One through Three, constituting obstruction of justice in violation of 18 U.S.C. § 1512(b)(1).

Count Five alleged that Chandler committed bank fraud in violation of 18 U.S.C. § 1344. Count Five charged that, between November 1991 and March 1992, Chandler falsely obtained a line of credit from Household Finance Corporation, a division of Household Bank, by giving her name as Amy L. Walker. The indictment alleges that the real Amy L. Walker, Chandler's sister, died in 1968 and that Chandler used her credit line to sign checks totalling $4,898.

A jury trial was held in July 1994. Chandler represented herself with the assistance of a legal advisor. At trial, the Government presented evidence that Chandler obtained credit cards, passports, driver's licenses, and a social security card, in the names Amy Glasper, Gail Thomas Wilson, and Alma Pearsall, and visited Gregory Glasper, an inmate whom she has since married, using this identification and in violation of the terms of her parole. The Government also presented evidence that, under the name of Amy L. Walker, Chandler withdrew money using a check from one of the credit card accounts, an action which formed the basis of the bank fraud count.

Before charging the jury, the district court dismissed the counts for fraud and misuse of visas, permits, and other documents (Count Three) and for obstruction of justice (Count Four). The court charged the jury on July 12, 1994. Chandler did not object to the portion of the charge covering bank fraud. Later that day, the jury returned a verdict of guilty on all three remaining counts.

On September 16, 1994, the district court sentenced Chandler to twenty-one months of imprisonment, with credit for time served, five years of supervised release, $4,898 in restitution, and a $150 special assessment. Having served her sentence, Chandler is no longer incarcerated.

On appeal, Chandler argues the district court erred in the jury instructions for each of the three counts presented to the jury. Chandler challenges the bank fraud conviction (Count Five) on the ground that the court failed to charge the jury that in order to convict it had to find that she intended to harm the bank. Chandler challenges the false identification conviction (Count One) on several grounds, including that the court failed to provide a "specific unanimity" charge. Finally, Chandler contends that the court's instructions to the jury on the false passport charge (Count Two) were prejudicially unbalanced.

We address each argument in turn.

## II. DISCUSSION

### A. Bank Fraud

Chandler claims that the court erred in charging the jury that it could convict her of bank fraud under 18 U.S.C. § 1344 if it found

that she intended to deceive the bank. She claims that § 1344 requires not just intent to deceive but intent to harm or cheat. Chandler points out that while intent to deceive can be found if the defendant knowingly gave false information, intent to harm or cheat can only be satisfied if the defendant intended to cause the bank an actual or potential loss.

■ The bank fraud statute provides that

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344 (emphasis added). Subsections (1) and (2) are distinct, though often overlapping, offenses. The statute plainly provides that conviction for bank fraud requires proof of subsection (1) or subsection (2), but not both. *See, e.g., United States v. Ragosta,* 970 F.2d 1085 (2d Cir.1992) (affirming conviction based on subsection (1) only).

The district court instructed the jury on the three essential elements of bank fraud. For the first element, the court summarized the statute but changed it to the conjunctive, thereby erroneously indicating that Chandler could be convicted only if the jury found that she violated both § 1344(1) and § 1344(2): [1] "In order to prove the defendant guilty [of bank fraud], the [G]overnment must prove .... [that] the defendant knowingly and wilfully executed a scheme or artifice to defraud *and* to obtain the money or funds from or under the control of a financial institution by means of false or fraudulent representations" (emphasis added). The court explained that the second element is "intent to defraud" and that the third element is that the bank was

insured by the Federal Deposit Insurance Corporation.

The court defined the term "scheme or artifice to defraud" ("scheme to defraud") in the first element by stating: "The phrase scheme or artifice to defraud means any deliberate plan or action or course of conduct by which someone intends to deceive *or* to cheat another *or* by which someone intends to deprive another of something of value" (emphasis added). The court defined the second element of bank fraud as follows:

Definition of intent to defraud.

To act with an intent to defraud means to act knowingly and with the intention or purpose to deceive *or* to cheat.

An intent to defraud is accompanied, ordinarily, by a desire or purpose to bring about some gain or benefit to oneself *or* by a desire or purpose to cause some loss to some person, in this case to the bank.

(Emphasis added.)

During the jury's deliberations, one juror asked the court to define the difference between "fraud" and "defraud" and the foreman asked how the terms "fraud" and "defraud" apply to the bank fraud count. The court reconvened the jury and gave substantially the same bank fraud charge. The court again explained the first element of the offense by restating the statute in the conjunctive. The court repeated word for word its definition of a component of the first element, "scheme to defraud," and of the second element, "intent to defraud," again using the disjunctive "or" rather than the conjunctive "and."

■ Chandler argues that the court's definition of the first two elements did not require the jury to find intent to harm and that the bank fraud statute requires such a finding. Chandler did not object to the charge below, so we review the charge for plain error pursuant to Federal Rule of Criminal Procedure 52(b).

■ Plain error (1) is error, (2) is clear or obvious, and (3) affects the substantial

---

1. Chandler wisely does not challenge this error since it increases the Government's burden of proof and could not have prejudiced her. *See United States v. Schwartz,* 899 F.2d 243, 248 (3d Cir.1990) (conflation of bank fraud subsections could not have harmed defendant because "unnecessarily enhanced the [G]overnment's burden").

rights of the defendant, which generally means that prejudice results. *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993); *United States v. Birbal,* 62 F.3d 456, 461 (2d Cir.1995). If, as here, the error was error under circuit law at the time of trial, the plaintiff bears the burden of persuasion for each of the three requirements for plain error. *United States v. Viola,* 35 F.3d 37, 42–43 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995). When it finds plain error, this court has discretion to grant relief, based on whether the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano,* 507 U.S. at 732, 113 S.Ct. at 1776 (quotation marks omitted).

Here, we find that there was error. Viewing the error in the context of the charge as a whole, as we must, *United States v. Vebeliunas,* 76 F.3d 1283, 1290 (2d Cir.1996), we find that the error neither prejudiced the defendant nor diminished her rights.

 Since the bank fraud statute was modelled after the mail and wire fraud statutes, precedents interpreting those statutes are helpful in interpreting the bank fraud statute. *Ragosta,* 970 F.2d at 1090 n. 2. Accordingly, we look to our mail and wire fraud precedents to interpret the meaning of "a scheme to defraud" under subsection (1) of the bank fraud statute. "Essential to a conviction under the 'scheme to defraud' clause of the mail fraud statute is a showing of fraudulent intent: i.e., intent to deceive *and* intent to cause actual harm." *United States v. Stavroulakis,* 952 F.2d 686, 694 (2d Cir.1992) (discussing predecessor statute, § 1344(a)(1), which is identical to § 1344(1) apart from section. numbering and scope of banks protected) (emphasis added). "[M]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit must be coupled with a contemplated harm to the victim." *United States v. D'Amato,* 39 F.3d

1249, 1257 (2d Cir.1994) (citation and quotation marks omitted).

 Consequently, to obtain a bank fraud conviction under subsection (1) alone, the Government must

> prove beyond a reasonable doubt that the "defendant engage[d] in or attempt[ed] to engage in a pattern or course of conduct designed to deceive a federally chartered or insured financial institution into releasing property, with the *intent to victimize* the institution by exposing it to actual or potential loss."

*Ragosta,* 970 F.2d at 1089 (quoting *Stavroulakis,* 952 F.2d at 694) (emphasis added). *Ragosta, Stavroulakis,* and *D'Amato* plainly establish that intent to deceive is insufficient under § 1344(1) and require intent to harm. Thus, the district court erred in its instructions to the jury on § 1344(1) when it defined "scheme to defraud" (a component of the first element of the offense) without requiring intent to harm.[2]

 The issue then becomes whether this error in the instructions prejudiced the defendant. On the one hand, prejudice ordinarily exists if the jury convicted without making a finding of intent to harm. Even though it appears that the evidence was sufficient to support such a finding, we cannot infer that the finding was actually made merely from the existence of sufficient evidence. On the other hand, we will examine the "erroneous instruction in light of other instructions and the evidence to determine what findings the jury necessarily made and whether such findings are the 'functional equivalent' of required findings." *United States v. Pimentel,* 83 F.3d 55, 59 (2d Cir. 1996) (citing *Sullivan v. Louisiana,* 508 U.S. 275, 280, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993)). Even though the court did not require a finding of intent to harm in its instructions defining "scheme to defraud," this error is not prejudicial if the jury's finding of intent to deceive is the "functional equivalent" of a finding of intent to harm.

---

2. The Government points out, however, that in response to the Government's objection to Chandler's summation the court told the jury that to convict Chandler for a scheme to defraud, the Government must prove "an intent to cause a loss." This is a correct explanation of intent to

harm under § 1344(1). Nonetheless, this correct instruction has no bearing on our affirmance of Chandler's bank fraud conviction because the jurors were entitled to rely on their instructions in the charge.

We know from the evidence that Chandler deceived Household by representing herself to be the deceased Amy Walker and that she did so in order to obtain a line of credit upon which she wrote checks totalling $4,898. We also know from the conviction that the jury at least concluded that she did this with intent to deceive Household. *See Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985) (reviewing courts assume the jury properly followed instructions).

■ At trial, Chandler testified that she made her first two credit payments on the debt that she conceded she had incurred under an assumed name. Chandler argued that she was prevented from making further payments by her arrest but that she had intended to make those payments. If Chandler had made the remaining payments, Household Bank would have suffered no actual loss (and if Chandler had paid finance charges, Household could have made a profit). Intent to harm, however, can be inferred from exposure to potential loss. *See Ragosta,* 970 F.2d at 1089.

Chandler argued at trial that she did not expose the bank to potential loss because she did not supply the bank with false information. She claimed that she had accrued a credit history using the pseudonym under which she applied for credit at Household Bank and that Household made its credit decision based on that actual credit history.

Nonetheless, as a result of Chandler's deceit, Household was necessarily exposed to potential loss because it extended credit to someone whom it did not know had more than one identity. Nor did Chandler's use of a false identity prior to applying to Household for credit legitimize her use of that identity when she applied to Household. A false identity remains a false identity even if it acquires a good credit history. The pseudonym prevented the bank from acquiring full information, exposing it to the risk that the applicant was less creditworthy than it

believed (e.g., Household only learned Carrie Chandler's credit history as Amy Walker, but never as Carrie Chandler), and making collections potentially more difficult.

■ Although Chandler's scheme necessarily exposed Household to potential loss, the question remains whether the jury's finding of intent to deceive necessarily equals a finding of intent to harm given the nature of the scheme. A mere showing of harm—whether in the form of actual or potential loss—is insufficient to establish *intent* to harm.

However, as indicated above, we know from the conviction that the jury at the very least found that Chandler (1) obtained credit from the bank and (2), in doing so, intended to deceive the bank. Notwithstanding Chandler's protestations that she intended to repay, her intentionally deceptive conduct is inexplicable other than as a means of intentionally exposing Household to an unwanted risk. In the context of this case the intent to harm is inextricably bound to the intent to deceive. Chandler could not have had one without the other. Thus, the jury's finding of intent to deceive is the functional equivalent of the essential finding of intent to harm. *Cf. Pimentel,* 83 F.3d at 60 ("[E]ven if the jury may have thought it was [convicting under 'use' prong of firearms statute, 18 U.S.C. § 924(c) ], the fact that the instruction with respect to 'using' properly described 'carrying' [the other prong] made the jury's verdict the functional equivalent of a finding of 'carrying.' ").

Though the court erred in not instructing the jury it had to find intent to harm under § 1344(1), the error did not prejudice Chandler since such intent is necessarily inferred from the scheme.[3] Accordingly, we find no plain error.

Chandler's remaining claims are without merit.

### B. False Identification Charge

■ Chandler argues that the court failed to provide a "specific unanimity

---

**3.** Though not prejudicial in this case, the omission of the instruction requiring intent to harm remains error; the court is not relieved of its responsibility to instruct on intent to harm in those cases where such intent is necessarily inferred from the scheme itself. *See United States v. Starr,* 816 F.2d 94, 101 (2d Cir.1987) (failure to instruct on intent to harm under mail fraud is error even if intent to harm can be inferred from scheme itself).

charge" in instructing the jury on the false identification count. A specific unanimity charge states that all jurors must agree on a particular theory of how the defendant violated the law. The court only provided a general unanimity charge instructing the jury that it must return a unanimous verdict. This does not constitute error. *United States v. Harris*, 8 F.3d 943, 945 (2d Cir.1993).

 Chandler further argues that the court gave erroneous instructions on the "intent to use unlawfully" element because the alleged unlawful use of identification was merely a parole violation, which is not a violation of state law. Chandler is incorrect. Parole violation is a violation of state law under title 9, sections 8000 *et seq.* of the New York Official Compilation of Codes, Rules & Regulations, as authorized by section 259(2) of the New York Executive Law.

Finally, Chandler argues that the trial court erred in failing to charge that she could not be found guilty if she had been given permission to use the documents at issue. Lack of consent is not an element of false identification pursuant to 18 U.S.C. § 1028(a)(3), which prohibits "knowingly possess[ing] with intent to use unlawfully ... five or more identification documents (other than those issued lawfully for the use of the possessor) or false identification documents." Intent to use false identification unlawfully is, by itself, a crime under § 1028, whether or not there is consent by the person whose identity is falsely used by the defendant.

C. False Passport Charge

Chandler challenges the false passport charge as prejudicially unbalanced. We find nothing prejudicially unbalanced about the charge, nor do we find any misstatements of law.

### III. CONCLUSION

For the foregoing reasons, we affirm the appellant's judgments of conviction.