**UNITED STATES of America,**
**Appellee,**

v.

**Paul WEINER, Defendant–Appellant,**

**Irwin Zellermaier, Defendant.**

**Docket No. 05–1512–CR.**

United States Court of Appeals,
Second Circuit.

Oct. 14, 2005.

Douglas Gross, Hofheimer Gartlier & Gross, LLP, New York, New York, for Appellant.

Jonathan R. Streeter, Assistant United States Attorney (Peter G. Neiman, Assistant United States Attorney, on the brief), for David N. Kelley, United States, Attorney for the Southern District of New York, New York, New York, for Appellee.

Present: MESKILL, NEWMAN, and RAGGI, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of conviction, entered on March 8, 2005, in the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*), is hereby AFFIRMED.

Defendant Paul Weiner, who was convicted after a jury trial of conspiring to launder money in violation of 18 U.S.C. § 1956(a), (h), appeals his conviction on the grounds that (1) the evidence was insufficient to support a verdict of guilty, (2) the evidence establishes entrapment as a matter of law, (3) his conviction violates due process, and (4) there was a constructive amendment in the indictment or an impermissible variance between the indictment and the trial evidence. We assume the parties' familiarity with the facts of this case and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1. *Sufficiency of the Evidence*

A defendant challenging the sufficiency of the evidence supporting his conviction

"bears a 'heavy burden,'" *United States v. McCarthy,* 271 F.3d 387, 394 (2d Cir.2001) (quoting *United States v. Bala,* 236 F.3d 87, 93 (2d Cir.2000)), because, although we review his claim *de novo,* we will "'affirm if the evidence, when viewed in its totality and in the light most favorable to the government, would permit any rational jury to find the essential elements of the crime beyond a reasonable doubt,'" *United States v. Madori,* 419 F.3d 159, 166 (2d Cir.2005) (quoting *United States v. Geibel,* 369 F.3d 682, 689 (2d Cir.2004)).

### a. *Meeting of the Minds*

■ Weiner does not seriously dispute that he offered to launder money for the undercover agents on December 18, 2002; indeed, he virtually admitted as much in his own testimony at trial. Instead, he submits that the government failed to prove that there was a conspiratorial "meeting of the minds" between himself and his co-defendant Zellermaier. He is wrong. The government carried its burden by offering evidence that Weiner and Zellermaier closely collaborated throughout the December 18, 2002 meeting—with Weiner often taking the lead—to offer money laundering services to the agents. *See United States v. Amato,* 15 F.3d 230, 235 (2d Cir.1994) ("The government need not present evidence of a formal or express agreement, but may rely on proof that the parties have a tacit understanding to engage in the offense."); *see also United States v. Geibel,* 369 F.3d at 689 ("'The co-conspirators need not have agreed on the details of the conspiracy, so long as they agreed on the essential nature of the plan.'" (quoting *United States v. McDermott,* 245 F.3d 133, 137 (2d Cir.2001))). That the agents never accepted the offer could not undo Weiner's agreement with Zellermaier.

### b. *Health Care Fraud*

To convict Weiner of a conspiracy in violation of 18 U.S.C. § 1956(a), (h), the government was required to prove that the money at issue had been represented to him as the proceeds of a specified unlawful activity, in this case, "a Federal health care offense." 18 U.S.C. § 1956(c)(7)(F); *see United States v. All Funds Distributed to Weiss,* 345 F.3d 49, 53 n. 2 (2d Cir.2003); *see also Doe v. United States (In re Admin. Subpoena),* 253 F.3d 256, 265 (6th Cir.2001) ("The Code broadly defines a 'Federal health care offense' as a violation of, or a conspiracy to violate, a number of health-care related offenses, including 18 U.S.C. § 1035 (false statements relating to health care matters) and 18 U.S.C. § 1347 (health care fraud).").

Relying on *United States v. Anderson,* 391 F.3d 970, 977 (9th Cir.2004), Weiner argues that the agents' representation had to be sufficiently specific to establish each element of health care fraud. That is not the law in this circuit. *See United States v. Leslie,* 103 F.3d 1093, 1103–04 (2d Cir. 1997) (holding that agent's comment about "powder-type" money containing traces of drugs was sufficient to prove defendant's belief that laundered money represented the proceeds of narcotics trafficking); *United States v. Wydermyer,* 51 F.3d 319, 328 (2d Cir.1995) (holding statements that money came from the sale of arms adequately represented to defendant that the funds were proceeds of specified unlawful activity, i.e., violation of the Arms Export Control Act).

■ On December 18, 2002, the undercover agents stated that the money they were laundering through General Credit derived from various frauds, including a healthcare scam being run by Russian confederates. This was sufficient to support a jury finding that the agents had represented to Weiner that the funds at issue de-

rived, at least in part, from this specified unlawful activity. To the extent Weiner submits that a single reference to health-care fraud was not entitled to much weight, that was a question for the jury, which we assume was resolved in favor of the government. *See United States v. Wydermyer*, 51 F.3d at 327–28 (noting that whether statement "sufficiently conveys" that money derives from a specified activity is generally "a fact-specific determination").[1]

### 2. *Entrapment as a Matter of Law*

Defendant's argument that he was entrapped as a matter of law essentially contends "that the evidence was insufficient to permit the jury to rationally conclude that he was predisposed ... to commit the crime charged." *United States v. Harvey*, 991 F.2d 981, 992 (2d Cir.1993); *see United States v. Bala*, 236 F.3d at 94 (noting that, when a defendant presents credible evidence of government inducement to support defense of entrapment, the prosecutor must prove predisposition beyond a reasonable doubt); *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir.1995) (holding that "defendant is predisposed to commit a crime if he is ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so") (internal quotation marks omitted). We disagree.

Preliminarily, we note that the jury was by no means required to accept Weiner's claim of government inducement. The December 18, 2002 conversation reveals that the agents' ostensible purpose in meeting with the defendants was to demand that General Credit pay monies past due from the informant, not to propose future money laundering. It was Weiner, echoed by Zellermaier, who offered to continue this illicit service, thereby demonstrating his predisposition. For example, when the agents mentioned that they had recently laundered $832,000 elsewhere, business "that could have been yours," Dec. 18, 2002 Tr. at 50, it was Weiner who quickly responded, "Absolutely," and offered to find the agents "another broker," *id.*

To the extent Weiner submits that he was simply reacting to intimidation by two agents whom he believed were mobsters, we must assume that the jury, which heard Weiner's trial testimony on this point, the recorded exchanges that he characterizes as threatening, and his responsive money laundering proposal, simply did not find that defense credible. Although we examine only a cold record, we cannot conclude that such a finding was unreasonable as a matter of law. *See United States v. Ceballos*, 340 F.3d 115, 124 (2d Cir.2003) (in reviewing challenge to sufficiency of the evidence, court must "defer 'to the jury's determination of ... the credibility of the

1. In making this determination, the jury could also consider that, after Weiner proposed to continue the money laundering arrangement through a new broker, he attempted to preserve deniability for himself as to the criminal source of the funds at issue. When one agent emphasized that he wanted "no [expletive] CTRs on me," Weiner responded, "I don't want to know that. I want to know that you conduct a legitimate business," and further stated, "It's not my business what you guys do, okay. My business ... is I take checks, I cash them." Dec. 18, 2002 Tr. at 54. The

law does not permit a defendant to escape culpability for criminal conduct by consciously avoiding knowledge of a fact that would otherwise be obvious to him. *See United States v. Reyes*, 302 F.3d 48, 49–50 (2d Cir. 2002); *see also United States v. Adeniji*, 31 F.3d 58, 62 (2d Cir.1994) (The rationale for the conscious avoidance doctrine is that 'a defendant's affirmative efforts to "see no evil" and "hear no evil" do not somehow magically invest him with the ability to "do no evil."' (quoting *United States v. DiTommaso*, 817 F.2d 201, 218, n. 26 (2d Cir.1987))).

witnesses'" (quoting *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir.1998))).

### 3. *Due Process*

Weiner's argument that due process does not permit a defendant to be convicted of a money laundering conspiracy without proof of an overt act is foreclosed by the Supreme Court's decision in *Whitfield v. United States*, 543 U.S. 209, 125 S.Ct. 687, 689, 160 L.Ed.2d 611 (2005). Further, nothing in the record indicates conduct by government agents so egregious, repugnant, or conscious-shocking as to implicate due process. *See United States v. Jackson*, 345 F.3d 59, 67 (2d Cir.2003); *United States v. Rahman*, 189 F.3d 88, 131 (2d Cir.1999); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir.1984).

Relying on *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), Weiner nevertheless submits that due process demands reversal because "millions of otherwise law-abiding Americans," if similarly confronted with the intimidating conduct of the undercover agents in this case, would have responded by offering criminal assistance. The argument finds no support in *Lawrence*. Weiner's prosecution did not trench on defendant's "autonomy of self," or his "freedom of thought, belief, expression, and certain intimate conduct." *Id.* at 562, 123 S.Ct. 2472. Weiner was prosecuted—and convicted—not for intimate conduct engaged in within his home, but for conspiring to use a business to help mobsters launder money that they derived from criminal activities, including healthcare fraud. We reject Weiner's assertion that most law-abiding persons would have acted as he did.

### 4. *Constructive Amendment and Variance*

■ "To prevail on a constructive amendment claim, a defendant must dem-onstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment.'" *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir.2003) (quoting *United States v. Frank*, 156 F.3d 332, 337 (2d Cir.1998)). That is not this case. The indictment charged a money laundering conspiracy from October 2002 through January 2003. The district court's ruling that the government had failed, as a matter of law, to establish Weiner's involvement in the charged conspiracy before the December 18, 2002 meeting narrowed the time frame within which the government had to carry its burden of proof, but it did not alter any essential element of the charged conspiracy. *Id.* at 620–21 (holding that, "'[w]here charges are constructively narrowed or where a generally framed indictment encompasses the specific legal theory or evidence used at trial,' there is no constructive amendment") (quoting *United States v. Wallace*, 59 F.3d 333, 337 (2d Cir.1995) (internal quotation marks omitted)).

"'A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.'" *Id.* at 621 (quoting *United States v. Frank*, 156 F.3d at 337 n. 5 (internal quotation marks and emphasis omitted)). Here, the trial evidence was more narrowly focused (as to time) than the indictment, but there was no material difference in the factual circumstances of the charged conspiracy. *See United States v. Heimann*, 705 F.2d 662, 666 (2d Cir.1983) (noting that, "with respect to allegations of time, we have permitted proof to vary from the indict-

ment provided that the proof fell within the period of the indictment"). In any event, Weiner cannot demonstrate the " 'substantial prejudice' " essential to secure reversal on a claim of variance. *United States v. McDermott*, 245 F.3d at 139 (quoting *United States v. Johansen*, 56 F.3d 347, 351 (2d Cir.1995)).

The judgment of conviction, entered in the United States District Court for the Southern District of New York on March 8, 2005, is hereby AFFIRMED.