UNITED STATES of America, Appellee,

v.

Beulah JONES, Defendant–Appellant.

No. 06–2098–cr.

United States Court of Appeals, Second Circuit.

May 6, 2008.

Gail Jacobs, Great Neck, NY, for Defendant–Appellant.

Arlo Devlin–Brown, Assistant United States Attorney (Daniel A. Braun, Assistant United States Attorney, of counsel; Michael J. Garcia, United States Attorney for the Southern District of New York, on the brief), New York, NY, for Appellee.

PRESENT: Hon. CHESTER J. STRAUB, Hon. REENA RAGGI, Circuit Judges, Hon. SIDNEY H. STEIN, District Judge.[1]

### SUMMARY ORDER

Defendant–Appellant Beulah Jones appeals from an order of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge* ), entered on April 26, 2006, following a five-day jury trial after which Jones was found

1. The Honorable Sidney H. Stein, United States District Judge for the Southern District of New York, sitting by designation.

**14**

guilty of one count of theft of United States property, in violation of 18 U.S.C. § 641. We assume the parties' familiarity with the relevant procedural history, facts, and issues on appeal.

First, Jones argues that her conviction should be overturned for insufficiency of evidence of (1) her intent to commit a crime; and (2) the value of the bonds she was found guilty of stealing. "[A] defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a heavy burden." *United States v. Morgan*, 385 F.3d 196, 204 (2d Cir.2004). The evidence must "be viewed in the light most favorable to the government and all permissible inferences drawn in its favor" and "the conviction must be affirmed if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

■ Jones contends that the government failed to prove that she acted with the specific intent that the statute requires. *See* 18 U.S.C. § 641; *Morissette v. United States*, 342 U.S. 246, 271, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (construing 18 U.S.C. § 641 to require "knowledge of the facts, though not necessarily the law, that made the taking a conversion"). She asserts that no one would knowingly send a bad check to the Federal Reserve; that because she gave her real name and address, she must not have been trying to deceive the government; and that her protracted fight to retain the bonds corroborates her belief in her entitlement to them. However, at trial Jones offered contradictory testimony on whether she believed she had access to the Citibank account from which she wrote the check for the bonds. For example, Jones also testified that she had previously received at least twenty returned checks from the account, and that she remembered receiving at least ten letters from Citibank stating that

the account had been closed. Jones also acknowledged that she failed to include proof of available funds in her correspondence with the Federal Reserve regarding payment for the bonds. Additionally, Jones testified that when listing her assets on her Criminal Justice Act ("CJA") application for appointment of counsel, she did not include most of her alleged assets, including the Citibank account, because she did not have access to them and could not write a check from them. Thus, a rational trier of fact could have found that Jones acted with specific intent by rejecting the credibility of Jones's claim that she believed she had sufficient funds to pay for the bonds. *See United States v. Downing*, 297 F.3d 52, 56 (2d Cir.2002) (explaining that we "resolve all issues of credibility in the government's favor").

■ Jones also argues that the government failed to prove that the bonds had any value during the charged period ("from on or about February 27, 2004, through and including on or about April 19, 2004"), and thus she cannot be guilty of a felony violation of 18 U.S.C. § 641, which criminalizes conversion of property valued at more than $1,000. Jones claims that because (1) the bonds were not redeemable during the charged period; and (2) the Federal Reserve had placed a caveat on them by then, the bonds were worth less than $1,000. This argument is unavailing because under the statute, the word "value" means "face, par, or market value, or cost price, either wholesale or retail, *whichever is greater.*" 18 U.S.C. § 641 (emphasis added). The government established that the bonds had a total purchase price of $31,500. Thus, the bonds' face value clearly exceeds $1,000. Additionally, the government offered evidence that despite the caveat, Jones might have successfully redeemed the bonds at a private bank. Thus, the evidence on the record is

sufficient such that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Downing,* 297 F.3d at 56.

■ Second, Jones argues that the evidence presented at trial amounted to a constructive amendment or variance of the indictment, because the government offered evidence of Jones's conduct before and after the charged period, and because the jury charge did not clarify that the jury could not convict Jones if it found that the conversion took place after the charged period. A constructive amendment of an indictment occurs when " 'either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment.' " *United States v. Salmonese,* 352 F.3d 608, 620 (2d Cir.2003) (quoting *United States v. Frank,* 156 F.3d 332, 337 (2d Cir.1998)); *see also United States v. Ford,* 435 F.3d 204, 215–16 (2d Cir.2006); *United States v. Patino,* 962 F.2d 263, 265 (2d Cir.1992) ("An indictment is constructively amended when the proof at trial broadens the basis of conviction beyond that charged in the indictment."). By contrast, " '[a] variance occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment.' " *Salmonese,* 352 F.3d at 621 (quoting *Frank,* 156 F.3d at 337 n. 5). A constructive amendment of an indictment constitutes a per se violation of the Grand Jury Clause of the Fifth Amendment. *Id.* A defendant demonstrating a variance, however, must prove prejudice to prevail on her claim. *Id.* We decide whether a variance between an indictment and the proof at

trial is prejudicial, and thus "fatal to the prosecution," by determining whether the variance infringes on the "substantial rights" that indictments exist to protect— "to inform an accused of the charges against h[er] so that [s]he may prepare h[er] defense and to avoid double jeopardy." *United States v. D'Anna,* 450 F.2d 1201, 1204 (2d Cir.1971) (internal quotation marks omitted); *see also United States v. Resendiz–Ponce,* 549 U.S. 102, 127 S.Ct. 782, 788, 166 L.Ed.2d 591 (2007) (stating that there are "two constitutional requirements for an indictment: first, that it contains the elements of the offense charged and fairly informs a defendant of the charge against which [s]he must defend, and, second, that it enables h[er] to plead an acquittal or conviction in bar of future prosecutions for the same offense.") (internal alterations and quotation marks omitted). Within these limits, we have "consistently permitted significant flexibility in proof, provided the defendant was given notice of the core of criminality to be proved at trial. Proof at trial need not, indeed cannot, be a precise replica of the charges contained in an indictment." *United States v. Rigas,* 490 F.3d 208, 228 (2d Cir.2007) (internal citations omitted).

We find that no constructive amendment or variance of the indictment occurred here. The indictment charged that Jones "embezzle[d], st[ole], purloin[ed] and convert[ed] to her own use" property of the United States exceeding $1,000 in value from "on or about February 27, 2004, through and including on or about April 19, 2004." At trial, the government provided evidence with respect to, and the jury found, precisely that. Jones ordered the bonds on February 27, 2004, and the last piece of correspondence between Jones and the Federal Reserve was dated

April 21, 2004.[2] While the government presented some evidence of events occurring outside the date range provided for in the indictment, that evidence was presented in relation to the alleged criminal conduct which took place inside the provided time frame. For example, the government presented evidence that Jones's Citibank account was closed in 1997 for the purpose of showing her requisite intent to convert the bonds in 2004. In addition, as the government points out, the government presented evidence of events that occurred after the charged period—for example, evidence showing that a caveat was placed on the bonds on April 24, 2004—"not ... to show wrongdoing by Jones after the period of the charged offense, but so that the jurors would understand the reference to the caveats in the Federal Reserve Bank letter to Jones, and also to counter [Jones]'s argument that the Federal Reserve Bank had not really suffered any loss." Moreover, defense counsel repeated to the jury the date range alleged in the indictment in his summation. Accordingly, we cannot say that the evidence presented at trial "altered an essential element of the charge," *Salmonese*, 352 F.3d at 620, or that it "prove[d] facts materially different from those alleged in the indictment," *Salmonese*, 352 F.3d at 621, such that Jones was not adequately "inform[ed] ... of the charges against h[er]," thereby prohibiting her from "prepar[ing] h[er] defense" or "avoid[ing] double jeopardy," *D'Anna*, 450 F.2d at 1204. Nor can we conclude that, in the absence of a defense request, the trial court committed plain error by not *sua sponte* instructing the jury that proof of conversion outside the dates charged in the indictment could not support a guilty

verdict. *See United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir.2003) (en banc) ("Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."). Jones's argument therefore fails.

■ Third, Jones claims that her conviction must be overturned because the "conscious avoidance" charge impermissibly shifted the burden of proof of intent to the defendant by failing to include "actual belief" language. "In giving the conscious avoidance charge, the district judge should instruct the jury that knowledge of the existence of a particular fact is established (1) if a person is aware of a high probability of its existence, (2) unless he actually believes that it does not exist." *United States v. Schultz*, 333 F.3d 393, 413 (2d Cir.2003) (quoting *United States v. Feroz*, 848 F.2d 359, 360 (2d Cir.1988) (per curiam)). We review "the court's instructions to determine whether considered as a whole, the instructions adequately communicated the essential ideas to the jury." *Id.* at 413–14 (internal alterations and quotation marks omitted). Because Jones failed to raise this objection below, it must be reviewed for plain error.

Taken as a whole, the charge's discussion of "conscious avoidance" and "good faith" adequately communicated the essential idea that Jones could not be convicted if she did not actually believe she lacked sufficient funds to pay for the bonds. For

---

**2.** While this date falls two days after the end date alleged in the indictment, we have stated that "where 'on or about' language is used, the government is not required to prove the exact date, if a date reasonably near is estab-

lished ... This is especially true where, as here, the exact time when an offense was committed is not an essential element of the offense charged." *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir.1987).

example, the District Court instructed the jury, *inter alia,* that "if the defendant believed in good faith that she was making a payment with a good check, then she cannot be found guilty of knowing and intentional conversion," and that "[a]n honest error or mistake cannot be the basis for a conviction." Accordingly, on this point, the instructions as a whole did not constitute error, let alone plain error.

Finally, Jones argues that the District Court's instruction on the element of the bonds' value did not adequately convey the government's burden of proof. "We will vacate a conviction on the basis of erroneous jury instructions if a defendant offered an accurate charge at trial and can demonstrate that the charge actually given instead caused her prejudice." *United States v. Dupre,* 462 F.3d 131, 139 (2d Cir.2006). The Court initially instructed the jury that the fact that there may have been limitations on what the purchaser could do with the bonds "does not negate the value of the bonds in relation to the purchase price and the face value," but subsequently adequately cured any possible error and prevented any prejudice to Jones by clarifying (at defense counsel's request) that the jury had to make the value finding beyond a reasonable doubt, stating that he did not mean "to withdraw the issue from you and make the finding myself." Jones did not object to this remedial instruction, and it did not constitute plain error.

We have considered all of Jones's arguments and find them without merit. Accordingly, the judgment of the District Court is AFFIRMED.