Reham ABDULLAH, an infant by her Father and Natural Guardian, Ahmad ABDULLAH, and Keith C. Carlo, an Infant by his Mother and Natural Guardian, Andrea Coombs, On Behalf of Themselves and All Others Similarly situated, Plaintiffs,

v.

TRAVELERS PROPERTY CASUALTY CORP.; Travelers Group, Inc.; Tower Square Securities, Inc.; Salomon Smith Barney Holdings, Inc.; Ringler Associates, Inc.; Travelers Life & Annuity Company; and John Does 1 through 99, Defendants.

No. 3:99CV00155(WWE).

United States District Court, D. Connecticut.

Nov. 5, 1999.

Andrew S. Turret, Jeffrey S. Nobel, Schatz & Nobel, New Haven, CT, for Plaintiffs.

Thomas J. Groark, Jr., Kevin J. O'Connor, Peter M. Holland, Day, Berry & How-

ard, Hartford, CT, J. Daniel Sagarin, Regina Duchin Kraus, Margaret E. Haering, Hurwitz & Sagarin, Milford, CT, Steven Ross Herbert, Locke & Herbert, Stamford, CT, C. Scott Crabtree, Alexander & Crabtree, Denver, CO, for Defendants.

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

EGINTON, Senior District Judge.

Plaintiffs, Reham Abdullah ("Abdullah") and Keith Carlo ("Carlo"), bring this class action against Travelers Property Casualty Corporation ("TPC"), various Travelers affiliates, and an agent broker, Ringler Associates, Inc. ("Ringler") alleging violations of RICO and various state fraud laws arising out of the structured settlements of two tort cases filed in New York state courts.[1]

Pursuant to Fed.R.Civ.Proc 12(b), each defendant moves this Court to dismiss plaintiffs' complaint. For the reasons set forth below, the motions to dismiss [Doc. ## 33 & 35] are Granted.

## FACTS

Plaintiffs Reham Abdullah and Keith Carlo are both New York residents who entered into court-ordered structured settlements with the defendant TPC after filing personal injury lawsuits in New York state courts. The settlements provided an initial lump sum payment followed by an annuity of predetermined dollar amounts paid to plaintiffs at specific times in the future.[2] According to the settlement agreements, TPC would not fund the settlements itself. It would purchase the annuities from an affiliate through an agent broker who charged a commission for the transaction. The broker would then rebate to TPC up to 75% of the commission it received from the life insurer, an arrangement alleged to violate state insurance laws. The rebates had no effect on the value of the annuities or the initial lump sum payments, so that there was no impairment of the value of the bargained for settlements.

Plaintiffs allege that during settlement negotiations TPC falsely represented the actual cost of the annuities, claiming that the costs allegedly quoted by TPC did not account for the rebates. Specifically, when TPC purchased the financial instruments that would fund the amount specified in the agreement, TPC did not mention that it was getting a deal by paying less than the amount originally disclosed to the plaintiffs. Plaintiffs further allege that TPC continually mislead them by mailing canceled checks stating the cost of the annuities without regard to the rebates. Finally, plaintiffs assert that the difference between the actual cost to TPC and the represented cost belongs to them.

## DISCUSSION

■ A motion to dismiss under Fed. R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved

---

1. At this time no class has been certified.

2. The settlements to the individual plaintiffs are as follows:

Plaintiff Reham Abdullah:  $1,167.06 up front lump sum  
23,833.00 Attorney fees  
$28,236.97 First annuity payment on 5/1/2003  
$28,236.97 Second annuity payment on 5/1/2004  
$28,236.97 Third annuity payment on 5/1/2005  
$28,236.97 Fourth annuity payment on 5/1/2006  

Plaintiff Keith Carlo:  $25,000 up front lump sum  
$19,668.00 First annuity payment on 5/1/2005  
$19,668.00 Second annuity payment on 5/1/2006  
$19,668.00 Third annuity payment on 5/1/2007  
$19,668.00 Fourth annuity payment on 5/1/2008

consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)). In considering a motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

## A. RACKETEERING INFLUENCE & CORRUPT ORGANIZATION ACT

Plaintiffs claim that defendants violated RICO by committing the predicate acts of mail and wire fraud. Defendants raise two arguments with respect to plaintiffs' RICO cause of action. Specifically, they argue that plaintiffs have not alleged: (1) all of the elements of a RICO cause of action; (2) a RICO enterprise separate and distinct from defendants. This Court agrees with both of these arguments.

Title 18 U.S.C. section 1964 confers standing in civil RICO cases to any person injured in his business or property by reason of a violation of sec.1962. 18 U.S.C. 1964. In order to sustain a claim under RICO, a civil plaintiff must show: (1) a violation of section 1962; (2) an injury to his business or property; and (3) causation of the injury by the violation. 18 U.S.C. 1964. *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21 (2d Cir.1990). *Moore v. Painewebber, Inc.,* 189 F.3d 165, 169 (2d Cir.1999) (citing *United States v. Frank,* 156 F.3d 332, 336 (2d Cir.1998)).

### 1. Plaintiffs Do Not Allege a Factual Injury

Plaintiffs have not alleged a factual injury sufficient to sustain a RICO claim.

They merely allege that "due to defendants misrepresentations to plaintiffs and other members of the Class, plaintiffs and the Class were unaware that defendants did not, in fact, pay the full amount they had represented they would pay." The only economic loss that plaintiffs allege is an entitlement to the difference between the actual cost to TPC of purchasing the annuities through the agent broker dealer and the cost reflecting the rebates. Plaintiffs offer no theory of how this is "their property". 18 U.S.C. sec. 1964 (RICO requires an injury to the individual's business or property). Plaintiffs do not contend that their settlements suffered, that they were duped into accepting less than what they bargained for, or that the value of the annuity was something other than represented.

The events in this case are unambiguous. The New York courts approved structured settlements between defendant TPC and each plaintiff. Each settlement was for a sum certain and consisted of a lump sum payment and an annuity. The payment stream and the value of the annuity were specific in the agreement. There is no dispute that plaintiffs will receive the amount of money and payment stream for which they bargained in the settlement agreements, or that the value of the payment stream is anything less than bargained for. Any costs or rebates that TPC incurred in obtaining the amount of money bargained for in the settlement is immaterial as to the value of the settlement, and in no way injured the plaintiffs.

In *United States v. Starr,* 816 F.2d 94 (2d Cir.1987), the defendants were operators of a bulk mailing service that concealed higher-rate packages among the lower rate packages thereby defrauding the United States Postal Service. Although it was the United States Postal Service that was defrauded, the indictment charged defendants with using the mail to defraud its customers. The Second Circuit reversed the indictment on the grounds that "the customers had received

the same service they would have received had the defendants paid the proper postage." Id. at 98. The same result applies in this case. Despite any alleged misrepresentation, plaintiffs will receive the same settlement amounts and value of the settlements they would have received if TPC did not accept any rebates.

Plaintiffs' Rico claim must fail because they have not demonstrated an injury. They do not allege how the alleged representations entitle them to the difference between the actual cost and the rebate cost, or how they received anything less than what they were promised, or how the failure to disclose the rebates or costs of the annuities in anyway affected their settlements.[3]

### 2. Plaintiff Has Not Alleged a RICO Enterprise

■ Defendants also assert that plaintiffs have not alleged a RICO enterprise distinct from defendant Travelers as required by 18 U.S.C.1962(c). This court agrees.

Section 1962(c) prohibits any person employed by or associated with any enterprise to conduct such enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. sec.1962(c). In order to state a claim under RICO, plaintiff must allege a person and an enterprise that is distinct. *Discon Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir.1996). By alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented. *Riverwoods Chappaqua v. Marine Midland Bank*, 30 F.3d 339 (2nd Cir.1994).

Defendants in this action consist of Travelers Property Casualty, Travelers Group Inc., Tower Square Securities, Inc., Salomon Smith Barney Holdings, Inc., Travelers Life & Annuity Company and Ringler Associates. According to the complaint, all of the defendants are either affiliated corporations or agents of Travelers.[4] Taking the pleadings as true, plaintiffs allege that Travelers Group at all relevant times had power to and did control the affairs, operations, and conduct of those defendants and permitted and approved that conduct, and that Ringler and the other discount brokers were agents of Travelers.[5] These companies cannot be all knowing agents and affiliates and still meet the distinctive requirement under 1962(c). For this reason Plaintiffs RICO cause of action also fails.

### B. PLAINTIFF'S STATE LAW CLAIMS

Plaintiffs' remaining claims against defendants are based on state statutes and common law. Having dismissed all of the

3. This Court is further persuaded by the reasoning and the findings of a New Jersey court in a case that involves identical factual issues of fraud. Although the litigants differ in this case, not surprisingly, the attorneys do not. In *Potts v. Prudential Property and Casualty Co.*, HUD–L–0135–99, plaintiffs alleged violations of fraud laws arising out of structured settlements agreements. Dismissing the case, the New Jersey court ruled as a matter of law and plain common sense, that the representation of the rebate was not material and that the claimant received exactly what he bargained for.

4. The complaint provides in part:
Travelers directed the vast majority of this business on a virtually exclusive basis to a few select affiliate brokers. The designated brokers to whom these annuity orders were processed consisted solely of the small group of brokers (Tower Square Securities, Smith Barney, Ringler, and John Does 1 through 99) with which TPC enjoyed either an affiliation or a secret relationship by which such brokers in exchange for being named as agents ... rebated a significant percentage of their commissions on the sales of annuities to Travelers PC. Travelers PC also used other agents, including Ringler, for larger and more complex structured settlements.

5. Plaintiffs' failure to plead any factual allegations as to defendant discount brokers John Doe 1 to 99 is grounds for dismissal of the complaint pursuant to both Rule 9(b) and Rule 12(b)(6).

federal claims, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Plaintiffs' state law claims are hereby dismissed without prejudice.