Nelida VALDES and Juan Rivera, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

QWEST COMMUNICATIONS INTERNATIONAL, INC., Qwest International Telecom Corp., d/b/a/ Qwest Communications Services, Qwest LCI, Qwest, Defendants.

No. 3:00CV2271 (WWE).

United States District Court, D. Connecticut.

June 6, 2001.

Jack D. Miller, Keith S. McCabe, Regnier, Taylor, Curran & Eddy, Hartford, CT, Robert J. Papp, Rakosky, Miller & Cable, New London, CT, for Plaintiffs.

William M. Rubenstein, Michelle H. Seagull, Axinn, Veltrop & Karkrider, Hartford, CT, for Defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS

EGINTON, Senior District Judge.

The plaintiffs, Nelida Valdes and Juan Rivera, bring this class action suit against Qwest Communications International, Inc., Qwest International Telecom Corp., d/b/a Qwest Communications Services, Qwest LCI, and Qwest, alleging that the defendants switched the plaintiffs' and other customers' long distance carriers to Qwest

without the consent of the customer, a practice known as slamming. The plaintiffs allege fraud, unfair trade practices, and violations of Federal and Connecticut statutes and/or regulations.

Specifically, the plaintiffs allege a violation of Connecticut General Statutes ["CGS"] § 16–2556i, which regulates primary local or intrastate interexchange carrier orders, with liability pursuant to CGS § 42–110g(a) [Count One]; violation of CGS § 42–110b(a), of the Connecticut Unfair Trade Practices Act ["CUTPA"] [Count Two]; violation of 47 U.S.C. § 258(a) which prohibits any telecommunications carrier from submitting or executing a change in a subscriber's selection of a provider of telephone exchange service or toll service except as in accordance with such verification procedures as the Federal Communications Commission ["FCC"] shall prescribe under 47 C.F.R. § 64.1100 [Count Three]; fraudulent misrepresentation under the civil common law of Connecticut [Count Four]; violations of 18 U.S.C. §§ 1952, 1961, 1963, and 1964, Racketeering and Racketeer Influenced and Corrupt Organizations ["RICO"] [Count Five]; and state law negligence claims [Count Six].

Pending before this Court is Qwest's motion to dismiss pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). For the reasons stated below, the defendants' motion will be granted in part and denied in part.

## DISCUSSION

### Facts

The plaintiffs, Nelida Valdes and Juan Rivera, are Connecticut residents who claim that they are victims of the unauthorized switching of their intrastate and/or interstate long distance carriers by Qwest. They allege that Qwest contracted with independent contractors, known as third party distributors ("distributors"), to promote the sale of Qwest's long distance service. These distributors were required to obtain a signed Letter of Agency ("LOA") from consumers as verification of their permission to be switched. The plaintiffs allege that Qwest relied on information submitted electronically by the distributors, ignoring the falsity, or absence of, the LOAs. Plaintiffs allege carrier change orders were submitted to the local exchange carriers, including Southern New England Telephone ("SNET"), which were not authorized by the affected consumers.

The plaintiffs assert that the defendant Qwest has electronically submitted in-state and/or interstate long distance carrier change orders to local exchange carriers, which processed the orders and switched the plaintiffs' and other customers' long distance carriers to Qwest without the consent or legal documentation evidencing the consent of the customer. When Qwest received the LOAs from its distributors, many contained forged signatures, misspelled signatures, wrong names, incorrect middle initials, and outdated addresses.

The victims of this scheme, including plaintiffs Valdes and Rivera, were frequently unaware of the illegal switching of their long distance carriers until they received bills from Qwest for unauthorized carrier service, received bills from their authorized carrier notifying them of the switch, or noticed a charge for the actual switching on their local telephone bill.

The plaintiffs also assert that some victims have been subjected to more than one switch to Qwest without authorization, and have been billed for this unauthorized service after each such carrier change. The plaintiffs allege that when the victims resisted payment of these bills, Qwest threatened the largely low-income and/or minority victims with collection actions and damage to their credit. The plaintiffs also

state that Qwest failed to correct its mistakes by promptly returning the plaintiffs and others similarly situated to their previous carrier.

### Motion to Dismiss

■ The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The defendants move for dismissal pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), as well as Local Rule of Civil Procedure 9(a), arguing that the plaintiffs have failed to plead with particularity and for failure to state a claim upon which relief can be granted.

Specifically, Qwest asserts that the plaintiffs' CUTPA and Connecticut common law claims under counts one, two, four and six are preempted by the Federal Telecommunications Act of 1996 ["FTA"]. Qwest states that even if counts one and two are not preempted, the claims under CUTPA fail to state a claim because (1) the Connecticut General Assembly has determined that the conduct alleged is not subject to CUTPA; (2) the plaintiffs do not allege an ascertainable loss; and (3) there is no substantial consumer injury as

a matter of law because consumers are able to avoid any injury. Qwest also asserts that there is no private right of action under § 258 of the FTA, thus negating count three. Qwest claims that the complaint fails to allege the elements of a claim for fraudulent misrepresentation, and fails to allege any fraud with particularity as required by Fed.R.Civ.P. 9(b), under count four. Qwest submits that the complaint alleges none of the elements necessary to sustain a RICO claim [count five] and fails to allege any elements with particularity as required by Fed.R.Civ.P. 9(b). Finally, Qwest asserts that the state law negligence claim [count six] is preempted by the FTA. This Court will first address the preemption claim, the primary hurdle the plaintiffs must clear.

### Preemption under 47 U.S.C. § 258 [Counts One, Two, Four and Six]

Qwest argues that CUTPA and Connecticut tort law are preempted by the FTA, which specifically regulates the conduct at issue, the unauthorized switching or slamming of consumer interstate or intrastate long distance service. Qwest also asserts that Congress intended to "occupy the field" in regard to the regulation of long distance service, thereby preempting Connecticut's statute, CGS § 16–256i, which regulates primary local or intrastate carrier orders, and delineates penalties.

The plaintiffs counter that 47 U.S.C. § 258 does not implicitly or explicitly preempt CUTPA and fraud actions, and in fact expressly states that the remedies provided in the statute are in addition to any remedies already available by law. The plaintiffs point out that no cases hold that § 258 precludes or preempts CUTPA or state law fraud claims, and in fact, even broad, comprehensive federal regulation like ERISA,[1] which expressly states that it

---

1. Employee Retirement Income Security Act    of 1974.

preempts any state law relating to employee benefit plans, has been found by the Connecticut Supreme Court not to preempt CUTPA and fraud claims. *Napoletano v. CIGNA Healthcare of Conn., Inc.,* 238 Conn. 216, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S.Ct. 1106, 137 L.Ed.2d 308 (1997).

■ Section 258 was enacted as part of the Federal Telecommunications Act of 1996, and provides as follows:

(a) No telecommunications carrier shall submit or execute a change in a subscriber's selection of a provider of telephone exchange service or telephone toll service except in accordance with such verification procedures as the Commission shall prescribe. Nothing in this section shall preclude any State commission from enforcing such procedures with respect to intrastate services.

(b) Any telecommunications carrier that violates the verification procedures described in subsection (a) of this section and that collects charges for telephone exchange service or telephone toll service from a subscriber shall be liable to the carrier previously selected by the subscriber in an amount equal to all charges paid by such subscriber after such violation, in accordance with such procedures as the Commission may prescribe. The remedies provided by this subsection are in addition to any other remedies available by law.

The Supreme Court has held that when a court reviews an agency's construction of a statute it administers, the court has two questions before it. *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 842–3, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The first is whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter. However, if the court determines that Congress has not directly addressed the precise question, the court does not impose its own construction on the statute, but instead determines whether the statute is silent or ambiguous on a particular issue, and then decides if the agency's interpretation is based on a permissible construction of the statute.

This Court does not find silence or ambiguity in the federal statute. The plain language of 47 U.S.C. § 258(a) leaves no doubt that Congress did not intend the statute to preempt the states from passing laws and enforcing these laws regarding intrastate long distance service. The Connecticut statute in question, CGS § 16–256i, expressly states that it governs primary local or intrastate interexchange carrier orders. This Court finds no preemption by 47 U.S.C. § 258, but instead finds two parallel, symbiotic statutes, one governing out-of-state long distance service, and one governing in-state service. While the defendants assert that Congress added federal control over significant areas of intrastate telephone services with passage of the Telecommunications Act in 1996, an assertion with which this Court agrees, it cannot be disputed that 47 U.S.C. § 258(a) expressly reserves the enforcement of verification procedures for changes in intrastate carriers to the states.

■ To address Qwest's assertion of federal preemption regarding CUTPA and Connecticut common law claims of fraud and negligence, the Court focuses on 47 U.S.C. § 258(b), which expressly states that "the remedies provided by this subsection are in addition to any other remedies available by law." Qwest argues, *inter alia,* that there is no private cause of action under § 258(b), and even if the claims alleged in the complaint are not

preempted by federal law, the plaintiffs have not stated a claim under CUTPA, nor is the conduct alleged in the complaint actionable under CUTPA.

■ The plaintiffs proffer a convincing argument that the laws involved (47 U.S.C. § 258, CUTPA, and Connecticut common law) overlap to some degree but do not conflict in any sense. Section 258 punishes a long distance telephone service provider who does not follow the verification procedures delineated by the FCC before switching a consumer's long distance service, and compensates the victim of this misconduct; CUTPA punishes a person who engages in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade of commerce. Common law fraud, the elements of which are set out in a myriad of Connecticut cases, punishes a person who makes a false representation as to a statement of fact, who knows his statement is untrue, who makes the statement to induce the other party to act, and who causes the other party to act on the false representation to his detriment. *See Grayson v. Grayson*, 4 Conn.App. 275, 287, 494 A.2d 576 (1985). The victim is compensated when fraud is proven. The plaintiffs' common law tort claim of negligence in count six is likewise not expressly preempted by the federal statute.

This Court does not find that Congress intended, by enacting 47 U.S.C. § 258, to occupy the field of unfair trade practices, or common law fraud or tort claims. These claims by the plaintiffs arise out of the actions of Qwest and their agents. To deny the plaintiffs recourse, particularly on the claims arising from the slamming of their intrastate carrier service, would be to deny them justice under the law. Therefore, the Court does not find preemption, and will address Qwest's allegation that

the plaintiffs do not state a claim under CUTPA.

*Counts One and Two State a Claim Under CUTPA*

CUTPA is shorthand for CGS Title 42, Chapter 735a, entitled Unfair Trade Practices. The operative section is 42–110b, which prohibits unfair trade practices, and sets forth the legislative intent; § 42–110b(a) states that no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

■ The Court finds that Qwest agrees with the plaintiffs in its pleadings that unfair or deceptive actions occurred, based on Qwest's claim of itself being victimized by its distributors. Here, however, Qwest claims that only one of the subsections of CGS § 16–256i is actionable under CUTPA, that being § 16–256i(d)(2), which provides that there is a violation of CUTPA if a telecommunications carrier fails to switch a customer back to the original carrier within a reasonable period of time. Qwest claims that the plaintiffs did not plead this claim, hence this Court must dismiss the plaintiffs' claims under counts one and two. However, in the revised complaint [doc. # 20, ¶ 17], the plaintiffs do assert that Qwest failed to correct its mistakes by promptly returning the plaintiffs and others similarly situated to their previous carrier. Therefore, the Court finds that the plaintiffs have sufficiently pled this claim.

■ Qwest also raises the issue that plaintiffs have a lack of standing to bring their CUTPA claims, stating that the plaintiffs allege no ascertainable loss. The plaintiffs have alleged in their amended complaint that they were billed for unauthorized service, billed for amounts not legally due, and threatened with collection actions when they resisted payment.

They have also alleged that in some instances there was more than one unauthorized switch, and that some victims were billed for each such carrier change. The plaintiffs state that they have the ability to prove that the actions of Qwest in illegally changing their long distance service resulted in bills, payments, and other economic harm to the plaintiffs, and that the injury was substantial. The plaintiffs assert that they do not sue because one plaintiff lost a few dollars, but because hundreds, perhaps thousands of individuals have fallen victim to Qwest's illegal practices. The Court finds that the plaintiffs have pled ascertainable damages sufficiently to petition for relief under CUTPA.

■ Another issue raised by Qwest is the plaintiffs' failure to state a claim for negligent supervision under CUTPA where the consumers in the present case could have reasonably avoided any injury. Qwest claims the plaintiffs were liable for contributory negligence by not implementing a preferred carrier freeze under 47 C.F.R. § 64.1190 by simply calling their local phone company and requesting it. Qwest asserts that Connecticut case law disallows CUTPA claims when contributory negligence by the plaintiff is found. *A–G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 579 A.2d 69 (1990) (holding that there is no CUTPA violation when the sole basis of the claim is the defendant's negligence and the jury determines that the plaintiff was contributorily negligent).

The plaintiffs point out that the victim of slamming is typically unaware that slamming has occurred until after the fact, because of the illegal forgery and deceit employed to accomplish the unauthorized switching of the long distance carrier, and the victim has no reason to anticipate that it may occur. This Court concurs. To expect the average consumer to be aware of 47 C.F.R. § 64.1190, much less to un-

derstand it in its entirety, is ludicrous. Once the consumer has been slammed, the information regarding a preferred carrier freeze is usually provided after the fact, by the local phone company and/or authorized carrier, in the course of the consumer's attempt to straighten things out with his long distance carrier service. Therefore the Court will not dismiss the CUTPA claim on the basis of contributory negligence.

*Private Cause of Action under 47 U.S.C. § 258(b)*

■ Qwest argues that § 258(b) does not provide a private cause of action, but is only a vehicle for the carrier previously selected by the subscriber to be made whole by the carrier found in violation of the statute. Qwest correctly states that the statute does not expressly address a private cause of action.

The plaintiffs point out that 47 U.S.C. § 258 is but a small part of Chapter Five of the U.S.Code, which creates and empowers the FCC; they cite §§ 206 and 207, which allow the person or persons damaged to seek redress in the courts for injury caused by common carriers. Section 207 explicitly gives the wronged person or persons a choice of either filing a complaint with the FCC, or bringing suit for recovery of damages in any district court of the United States of competent jurisdiction.

Qwest brings the Court's attention to *Conboy v. AT & T Corp.*, 241 F.3d 242 (2001), where the district court held, and the Second Circuit affirmed, that the plaintiffs had no private right of action for monetary damages for alleged violations of two sections of the FTA. Qwest asserts that *Conboy* is controlling in the present case.

The plaintiffs argue that the district court in that case found a private cause of

action under 47 U.S.C. §§ 206 and 207, but dismissed the case because the recovery of "presumed damages" was not permitted, and that Congress did not intend to create a private right of action with respect to the two statutes at issue (47 C.F.R. §§ 51.217 and 64.1201). This Court agrees with the plaintiffs' interpretation of the holding in *Conboy*, and accepts as true their pleadings that they have alleged and will prove that the actions of the defendants in illegally changing their long distance service resulted in bills, payments and other economic harm to the plaintiffs. This Court also reads the *Conboy* decision narrowly, as finding no private cause of action with respect to the named regulations. Therefore, *Conboy* is not controlling here. The case does have value to our ruling, however.

■ In reaching its decision in *Conboy*, the Second Circuit applied the four-factor test established by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The *Cort* test determines whether a federal statute creates an implied right of action by asking

(1) whether the statute was enacted to benefit a special class; (2) whether the drafters intended to create a private right of action; (3) whether a private right of action would be consistent with the purpose of the statute; and (4) whether the cause of action is not one traditionally relegated to the states.

The critical inquiry is congressional intent, and the burden of proving congressional intent rests with the plaintiff. *New York City Envtl. Justice Alliance v. Giuliani*, 214 F.3d 65, 73 (2d Cir.2000). In *Conboy*, the Second Circuit held that the plaintiffs had not met this burden of showing congressional intent.

Slamming is a relatively new phenomenon, and 47 U.S.C. 258 does not expressly allow or prohibit a private right of action.

The statute may be read as having been created to benefit a special class, i.e., consumers who have had their long distance carriers changed illegally, and the plaintiffs are members of that particular class. However, Supreme Court decisions since *Cort* have stated that the crucial inquiry is the second factor, congressional intent. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

The plaintiffs argue that congressional intent to create a private cause of action is manifested in the plain language of 47 U.S.C. § 258, i.e., the mention of "other remedies available at law," coupled with the language of § 207, which encourages private causes of action against violators of the FTA. For these reasons, this Court distinguishes the present case from the case in *Conboy*, and will not dismiss the present case on the issue of lack of a private right of action.

*Elements of a Claim for Fraudulent Misrepresentation Not Alleged*

Qwest asserts that the plaintiffs have not alleged the elements of fraudulent misrepresentation in count four, nor do the allegations in count four comply with the particularity requirements of Fed.R.Civ.P. Rule 9(b). The Federal Rules of Civil Procedure do not require a plaintiff to detail all the facts upon which a claim is based in the complaint. "To the contrary, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. at 47, 78 S.Ct. 99 (1957). However, when a plaintiff alleges fraud in the complaint, Rule 9(b) contains an additional requirement: "In all averments of fraud or mistake, the circumstances constituting fraud

or mistake shall be stated with particularity."

◼ The elements of fraudulent misrepresentation are as follows: (1) a false representation was made as to a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. *Statewide Grievance Committee v. Egbarin,* 61 Conn.App. 445, 454, 767 A.2d 732 (2001).

◼ As to the first element, Qwest charges that the complaint does not identify a statement of fact allegedly made by Qwest, and without a representation there can be no misrepresentation. Without identification of a statement of fact, Qwest correctly states that it would be impossible to assess the existence of the second element's requirement that any falsity be known to the defendant. Regarding the third and fourth elements, Qwest opines that the plaintiffs were not induced to act by any statement made by Qwest, much less induced to act to their detriment.

The Court concurs with the defendants that count four must be dismissed based on the plaintiffs' failure to plead the elements of fraudulent misrepresentation, with particularity under Rule 9(b), or otherwise. The Court cannot ascertain any statements made directly by Qwest to the plaintiffs that the plaintiffs relied on to their detriment. While both parties blame the third party distributors, the distributors are not parties to the present action.

Therefore, this Court will dismiss the claim of fraudulent misrepresentation without prejudice. If the plaintiffs should decide to replead the allegations of fraudulent misrepresentation, they must give particulars as to the statements made, the respect in which statements, if any, are fraudulent, detailing the time and place such statements were made, and identifying the persons charged with having made those statements. They must also state with particularity any information they have alleging that Qwest knew the statements were untrue, and that the plaintiffs were induced to act to their detriment or injury.

*Elements of a RICO Claim Are Not Alleged*

◼ Qwest also asserts that count five of the complaint should be dismissed because the plaintiffs' allegations fall far short of the pleading burdens of 18 U.S.C. § 1961 *et seq.,* or RICO, because violation of § 1962 was not alleged. In their revised complaint, the plaintiffs specifically state they are alleging a RICO claim, although § 1962 is not expressly mentioned. They request leave to amend the complaint to correct this omission. This Court will allow the plaintiffs to correct this error of omission because of their specific mention of violations under 18 U.S.C. §§ 1951, 1961, 1963, and 1964, and will now address the RICO issues raised by the plaintiff.

◼ To state a claim for a RICO violation, the plaintiffs have two threshold pleading requirements. First, they must allege that the defendants, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly invest in, or participate in an enterprise, the activities of which affect interstate or foreign commerce. Second, they must allege that they were injured in their business or property by reason of a violation of § 1962. *Mendlow v. Seven Locks Facility,* 86 F.Supp.2d 55, 57 (D.Conn.2000).

◼ The plaintiffs contend that Qwest has violated 18 U.S.C. § 1952 by using the U.S. mail to bill at least two slamming victims for services neither requested or

authorized, thus engaging in acts constituting racketeering activity. This Court is in agreement with Qwest's contention that the plaintiffs have ignored the definition of unlawful activity as it is used in § 1952. Section 1952(b) defines unlawful activity as any business enterprise involving gambling, liquor on which the federal excise tax hasn't been paid, narcotics, controlled substances, or prostitution offenses; extortion, bribery or arson; or any act indictable under Subchapter II of Chapter 53 (Monetary Transactions) of Title 31 of the United States Code or 18 U.S.C. §§ 1956 (laundering of monetary instruments) and 1957 (engaging in monetary transactions in property derived from specified unlawful activity), none of which have been pled in the present case. Consequently, § 1951 does not assist the plaintiffs in meeting the first pleading requirement for a RICO claim, but leave has been given by this Court to plead a violation of § 1962.

■ The plaintiffs also allege an "enterprise," defining it as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, or a group of persons associated together for a common purpose of engaging in a course of conduct. This Court has held that a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant cannot be considered a RICO enterprise. *Abdullah v. Travelers Property Casualty Corp.*, 83 F.Supp.2d 289, 292 (D.Conn.1999). Section 1962(c) prohibits any person employed by or associated with any enterprise to conduct such enterprise's affairs through a pattern of racketeering activity. Case law holds that in order to state a claim under RICO, a plaintiff must allege a person and an enterprise that is distinct. In *Abdullah,* the plaintiffs alleged that the corporations at

all relevant times had the power to, and did control the affairs, operations, and conduct of its employees and agents. In *Abdullah,* this Court found that the distinctive requirement under § 1962(c) was not satisfied, and the plaintiffs' RICO claim failed.

■ The threshold issue in count five is whether the distributors utilized by Qwest were agents of Qwest. The plaintiffs in the present case allege that the Qwest defendants associated together with their independent contractors or third-party distributors in order to promote Qwest's long distance service, to forcibly switch unwary consumers to Qwest through forged, fraudulent documentation, and therefore to slam these consumers. Qwest bemoans the fact that it, too, was a victim of the wrong-doing of these distributors with whom Qwest contracted, and upon whom Qwest relied. This raises a question of how much power or control Qwest had over the conduct of its distributors.

It is up to the trier of fact to determine if this relationship, readily admitted to by Qwest in the pleadings, constitutes an "enterprise" as defined under RICO. It is not the function of this Court on a Rule 12(b)(6) motion to weigh the evidence which might be presented at trial, but merely to determine whether the complaint itself is legally sufficient.

The Court has stated above that it will allow the plaintiffs to amend the complaint to correct the error of omission of 18 U.S.C. § 1962 as they have requested. If this element is properly pled to state a claim under the first element of a RICO action, the Court will draw all reasonable inference in favor of the pleader, and allow the action to go forward. If the plaintiffs fail to do so, Qwest may file an amended motion to dismiss, once again addressing the RICO claim. The second element necessary to state a claim for a RICO viola-

tion is injury in a complainant's business or property, which this Court has determined is an issue that has been pled sufficiently. Therefore, the Court will not dismiss count five for failure to state a claim under RICO.

### CONCLUSION

For the reasons set forth above, this Court GRANTS in part and DENIES in part Qwest's motion to dismiss [doc.# 7]. Qwest's motion to dismiss counts one, two, four and six, based on preemption of 47 U.S.C. § 258 is DENIED. Qwest's motion to dismiss counts one and two for failure to state a claim under CUTPA is DENIED. Qwest's motion to dismiss count three for no cause of action under 47 U.S.C. 258 is DENIED. Qwest's motion to dismiss count four for failure to state a claim of fraudulent misrepresentation is GRANTED without prejudice, with leave to the plaintiffs to replead with particulars under Fed.R.Civ.P. Rule 9(b). Qwest's motion to dismiss count five for failure to allege the elements of a RICO claim is DENIED. The plaintiffs are directed to amend their complaint by inclusion of their claim under 18 U.S.C. § 1962.

SO ORDERED.